(C.D. 2363)

BIRD MACHINE COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 4, 1962)

*Richard J. Walsh* (*Francis E. Silva, Jr.,* and *Charles W. Heard* of counsel) for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., dissenting

LAWRENCE, Judge: This is a companion case to *Bird Machine Company* v. *United States* (protest No. 61/8644), 49 Cust. Ct. 65, C.D. 2362, decided concurrently herewith. The record in that case is incorporated herein. We there held that a so-called Skardal stock preparator was properly classified by the collector of customs as "Other stock treating parts for paper and pulp machinery" in paragraph 356 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 356), as modified by trade agreement with Sweden, 68 Treas. Dec. 19, T.D. 47785, or the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

In the present case, 11 protests enumerated in the attached schedule and made a part hereof were consolidated for trial. They relate to importations of what are described as "metal screen plates." The merchandise was classified by the collector of customs as "Stock treating parts for paper and pulp machinery" in paragraph 356 of said act, as modified by the sixth protocol, *supra*, and duty was imposed thereon at the rate of 18 per centum or 17 per centum ad valorem, depending upon the date of importation, plus an internal revenue tax which is not involved in this proceeding.

Plaintiff claims that the articles should be classified as "Parts, not specially provided for, wholly or in chief value of metal" of "machines for making paper or paper pulp" in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the sixth protocol, *supra*, and subjected to duty at the rate of 9 per centum or 8½ per centum ad valorem, depending upon the date of importation.

The pertinent text of the statutes is here set forth.

Paragraph 356 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

| | | |
|---|---|---|
| Roll bars, bed plates, and all other stock-treating parts for pulp and paper machinery (not including paper or pulp mill knives) _____ | 18% ad val. | 17% ad val. |

Paragraph 372 of said act, as modified, *supra:*

Machines, finished or unfinished, not specially provided for:
    Adding machines * * *

*     *     *     *     *     *     *

| | | |
|---|---|---|
| Combination candy cutting and wrapping machines; machines for making paper or paper pulp; * * *_____ | 9% ad val. | 8½% ad val. |

*     *     *     *     *     *     *

| | |
|---|---|
| Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____ | The rate for the article of which they are parts. |

*     *     *     *     *     *     *

The facts of the case are not in dispute. An agreed statement thereof is contained in the stipulation of the parties which was presented at the trial and ordered filed.

Paragraph one of the stipulation states that the merchandise consists of "* * * metal screen plates for the so-called Bird Jonsson Screen."

Paragraph two describes the Bird Jonsson screen as a—

* * * compact self-contained unit consisting of an open trough or vat in which the perforate screen plates form the base or floor. The stock flows into one end of the screen and is subjected to intense but precisely controlled vibration while traveling over the scientifically shaped and perforated screening area. The purpose of the screen is to separate wanted fibres from unwanted dirt, knots, chips, knuckles, cockle burrs, wet strength paper, cellophane, paper clips, rubber bands, etc. This result is accomplished by the stock containing the good, clean fibres passing through the screen plate openings while the other materials are carried to the discharge end of the screen, impelled by the vibrating action of the screening surface. The screen does not change the size or shape or otherwise affect the fibres or other materials. It merely screens from the stock all material other than usable fibres.

A detailed description of the Bird Jonsson screen is also contained in a brochure issued by the Bird Machine Company attached to the stipulation and marked exhibit "A."

At the trial, plaintiff called Sven Fahlgren who testified to his familiarity with the article in controversy. When asked if he had an opinion whether the article had "any function in treating stock for pulp or paper-pulp making," he replied, "It's not treating; it's separating."

The testimony of George L. Nelson with reference to the Jonsson screen, which was given in the companion case and incorporated herein, recites in greater detail the nature and functions of the Jonsson screen of which the metal plates in issue form parts.

With the foregoing undisputed facts before us, the sole question remains whether the metal screen plates are stock treating parts for pulp and paper machinery within the meaning of said paragraph 356, as modified, *supra*, or are parts of machines for making paper or paper pulp within the meaning of said paragraph 372, as modified, *supra*.

As stated in the above quotation from the stipulation, the screen plates "form a base or floor" for the Jonsson screen. When the stock flows into the screen, the screen is subjected to a very rapid vibration which causes the stock containing clean fibers to pass through the screen plate openings while the unwanted materials are discharged at the end of the screen.

From an examination of the pulp flow diagram, illustrative exhibit 1 in the companion case, we have a clear picture of logs passing through the barking drum, the chips therefrom entering a digester containing chemicals under steam pressure, thence to a blow tank where the product passes on to the Jonsson screen which by a vibrating action separates the larger from the smaller parts, the latter passing through the screen. Knots, chips, knuckles, and so forth, which are too large to pass through the screen, are transmitted to the Skardal preparator for further reduction and treatment.

Both witnesses, Fahlgren and Nelson, expressed the opinion that the Jonsson screen is a machine for making paper pulp.

In the companion case, we discussed at some length, unnecessary to repeat here, our opinion that in the phrase "pulp and paper machinery" the word "machinery" was used in a broad sense to include not only machines but their parts and accessories which were used in the stock treating process.

The metal plates in controversy are parts of the Jonsson screen, which latter performs an important function in the conversion of pulpwood into woodpulp. Said screen is depicted on the flow diagram, exhibit 1 in the companion case, situated between the digester

and the Skardal preparator. Obviously, therefore, the Jonsson screen is a stock treating part of pulp machinery and since the metal plates are parts of the screen they become parts of stock treating parts for pulp machinery under the doctrine that a part of a part is a part of the whole. *United States* v. *American Express Co.*, 29 C.C.P.A. (Customs) 87, 93, C.A.D. 175.

Plaintiff relies upon the decision of our appellate court in *California Fruit Wrapping Mills (Inc.)* v. *United States*, 19 C.C.P.A. (Customs) 381, T.D. 45513. The court there held that Fourdrinier-wire screens were not stock treating parts for paper and pulp machinery but were properly classifiable as "machine parts, not specially provided for," in paragraph 372 of the Tariff Act of 1922. That was prior to the trade agreement modification of paragraph 372, *supra*, which now contains the provision for "machines for making paper or paper pulp."

It appears from the opinion of the court, in that case, that the sole function of the Fourdrinier-wire screen was to carry prepared paper stock from the head box on to the felt, which, in turn, passed it between the rollers of the paper machine for several squeezings.

What we have said in the companion case with reference to the *California* decision is repeated here:

The court was of the opinion that the words "stock-treating parts" in paragraph 356 of the Tariff Act of 1922, which is in identical terms with said paragraph in the act of 1930, had reference to the treatment of paper and pulp material before it reached the stage of entering upon the wire screens and was related to parts "* * * which perform, or assist in performing, the functions of cutting, grinding, beating, or similar functions." In conclusion, the court held that the Fourdrinier-wire screens did not perform such functions and, inasmuch as they served to manufacture paper from finished stock, they could not properly be held to be "stock-treating parts for pulp and paper machinery."

In the course of its opinion, the court stated—

We agree with the lower court that the screens here involved are not *ejusdem generis* with the articles designed in said paragraph 356. * * *

It is of interest here to recall what the lower court said with reference to the rule of *ejusdem generis* in the *California* case.

A reading of the opinion of the lower court (59 Treas. Dec. 981, T.D. 44841) discloses that the court there referred to *ejusdem generis* only after it had found that the function of the Fourdrinier-wire screen pertained to the manufacture or conversion of finished stock into either pulpboard or paper and that the elimination of water from the finished stock by the Fourdrinier-wire screen could not "in any

sense be considered a further treatment of the [raw] stock itself." The court thus concluded that the Fourdrinier-wire screen was not a stock treating part. It is clear, therefore, that the trial court did not apply the rule of *ejusdem generis* in order to arrive at its determination of the case, and such references which were made to the rule would seem to be in the nature of *dicta*.

In the instant case, however, the Bird Jonsson screens, of which the imported articles form parts, are employed, as indicated in exhibit 1 in the companion case, in the stock treating portion of the manufacture of paper and paper pulp. Under the decision in the *California* case, *supra*, the articles provided for in paragraph 356 were those "* * * which perform, or assist in performing, the functions of cutting, grinding, beating, or similar functions."

The testimony herein, as well as the stipulation of facts, clearly indicates that, by virtue of controlled vibration, the Jonsson screen separates wanted fibers from unwanted dirt, knots, chips, knuckles, cockle burrs, and so forth, and that those unwanted articles which do not pass through the screen are returned to the Skardal preparator for further refinement, possibly a number of times, until they are fine enough to pass through the Jonsson screen.

That operation, in our opinion, falls within the functions necessary to classify the Jonsson screen in paragraph 356, as set forth in the *California* case, *supra*, since it assists in performing the functions of "cutting, grinding, beating, or similar functions."

Upon the agreed facts of record and for the reasons stated, we find and hold that the metal screen plates for Jonsson screens were properly classified by the collector of customs within the provision for "stock-treating parts for pulp and paper machinery" in paragraph 356 of the Tariff Act of 1930, as modified, *supra*.

The protests are, therefore, overruled and judgment will issue accordingly.

### DISSENTING OPINION

RAO, Judge: By reason of the considerations hereinbelow stated, I am unable to concur in the conclusions reached by my associates herein.

The 11 protests here involved, which have been consolidated for purposes of trial, raise the question of the proper dutiable classification of certain imported merchandise referred to as metal screen plates for so-called Bird Jonsson screens. These items were classified by the collector of customs at the port of entry as stock treating parts for pulp and paper machinery, within the purview of paragraph 356 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and, accordingly, were assessed with duty at the rate of 18 per centum ad valorem or at the rate of 17 per centum ad valorem, depending upon the date of entry.

Plaintiff claims that said merchandise is properly dutiable at the rate of 9 per centum ad valorem or at the rate of 8½ per centum ad valorem, depending upon the date of entry, within the provisions for parts of machines for making paper or paper pulp in paragraph 372 of said act, as modified by said sixth protocol.

The pertinent portions of the respective trade agreement provisions read as follows:

Paragraph 356, as modified by T.D. 54108, *supra:*

Roll bars, bed plates, and all other stock-treating parts for pulp and paper machinery (not including paper or pulp mill knives) _____ 18% ad val.   17% ad val.

Paragraph 372, as modified by said T.D. 54108:

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

\* \* \* machines for making paper or paper pulp_____ 9% ad val.   8½% ad val.

\* \* \* \* \* \* \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____ The rate for the article of which they are parts.

This case raises issues which are allied to those involved in the case of *Bird Machine Company* v. *United States*, protest 61/8644, 49 Cust. Ct. 65, C.D. 2362, decided concurrently herewith, in which I have also noted my dissent, and the testimonial record in said case has been physically incorporated herein. In addition, the parties have stipulated certain material facts, and one of the two witnesses who testified in the companion case gave further testimony here.

The stipulation describes the imported articles and the machine in which they are used as follows:

1. The merchandise, the classification of which is the subject matter of these cases, is metal screen plates for the so-called Bird Jonsson Screen.

2. The Bird Jonsson screen is a compact self-contained unit consisting of an open trough or vat in which the perforate screen plates form the base or floor. The stock flows into one end of the screen and is subjected to intense but precisely controlled vibration while traveling over the scientifically shaped and perforated screening area. The purpose of the screen is to separate wanted fibres from unwanted dirt, knots, chips, knuckles, cockle burrs, wet strength paper, cellophane, paper clips, rubber bands, etc. This result is accomplished by the stock containing the good, clean fibres passing through the screen plate openings while the other materials are carried to the discharge end of the screen, impelled by the vibrating action of the screening surface. The screen does not change the size or shape or otherwise affect the fibres or other materials. It merely screens from the stock all material other than usable fibres.

A brochure, attached to the stipulation as exhibit A, provides a more detailed description of the Bird Jonsson screen, its operation, functions, and results, as well as photographic illustrations thereof.

The evidence in the incorporated case, as here supplemented, shows that after the raw materials for pulp making have been prepared for conversion into pulp, they are conveyed to a digester where they are treated with chemicals and cooked under steam pressure. The cooked batch, or slurry, as it is then called, flows from the digester into a blow tank and from there to the Jonsson screen which effects a coarse separation of knots, uncooked chips, slabs, and other debris from the finer particles of the slurry. The latter is further screened, washed, and thickened before it is conveyed to a storage chest as finished paper pulp. The screenings discharged from the Jonsson screen are usually returned to a refiner for reduction in size, after which they are sent back to the blow tank and again processed through the Jonsson screen.

Both witnesses were of opinion that the Jonsson screen is a machine for making paper and pulp, but not a stock treating machine, and that the metal screen plates are essential parts of the machine. They defined "treating" as a mechanical action, such as grinding or grating, which results in the reduction of the size and shape of a slurry. They did not consider the action of a Jonsson screen as a treating process, since it does not have any effect on the material which passes through it, other than to separate fine stock from larger particles and unwanted debris. In fact, according to one of the witnesses, the Jonsson screen is so rapid a process, sieving 2,000 gallons per minute, that there is no chance of abrasion or any reduction in size of the material which passes through it.

The merchandise involved in the companion case was a so-called Skardal stock preparator, as well as various parts thereof, which refines the coarse material discharged from the Jonsson screen by a process of beating and grinding between rotating shoes and the inner surface of a perforated cylinder. When the stock is sufficiently refined to pass through the holes in the cylinder, it is conveyed to a second and third similar unit having progressively smaller perforations until it is fine enough to be returned to the blow tank.

As in the instant case, the Skardal stock preparators were classified in paragraph 356 of the Tariff Act of 1930, as modified, *supra*, as stock treating parts for pulp and paper machinery, and were claimed to be properly provided for in paragraph 372, as modified, *supra*, as machines for making paper and pulp, or parts thereof. Although the precise issue in the case was whether a complete machine could be considered to be a stock treating part for pulp or paper machinery, a subsidiary consideration necessary to the ultimate determination of the issue was the scope and meaning of the statutory provision for "stock-treating parts for pulp and paper machinery."

Upon this phase of the case, I regarded as controlling the construction placed on this language by our appellate court in the case of *California Fruit Wrapping Mills (Inc.)* v. *United States*, 19 C.C.P.A. (Customs) 381, T.D. 45513, wherein the following is stated:

We do not think that the legislative intent in the use of the words "stock-treating parts for pulp and paper machinery" is so apparent as to exclude consideration of the doctrine of *ejusdem generis* or other applicable rules of construction.

We agree with the lower court that the screens here involved are not *ejusdem generis* with the articles designated in said paragraph 356. The articles named in the paragraph are those which cut, grind, or beat material, or assist in performing those functions. It is established that the screens * * * neither perform nor assist in performing such functions.

\* \* \* \* \* \* \*

As heretofore indicated, we think that the words "stock-treating parts," as used in said paragraph 356, refer to the treatment of paper and pulp material before it has reached the stage of going upon the wire screens here involved, and refer to parts which perform, or assist in performing, the functions of cutting, grinding, beating, or similar functions.

As explained in the instant record, it does not appear to me that the Jonsson screen performs or assists "in performing the functions of cutting, grinding, beating, or similar functions." While it is a step in the process of making paper pulp, the separation of coarse particles from fine does not effect a reduction in the size or shape of either the material which passes through the screen or the material which is discharged from it. Accordingly, it is not, in my opinion, a process similar to cutting, grinding, or beating, all of which necessarily affect the size or the shape or the character of the substance so treated.

Neither do I consider the Jonsson screen plate to be *ejusdem generis* with any of the items specified in paragraph 356 of the Tariff Act of 1930, as originally enacted [1] or as modified, *supra*.

Since it is clear that the Jonsson screen is a machine used in a pulp mill for the manufacture of paper pulp and that the subject screen plates are essential parts of said Jonsson screens, and in view of my analysis of the competing provisions in the companion case, I would sustain the claim of plaintiff for classification of the merchandise at bar within the provisions of paragraph 372, as modified, *supra*, as parts of machines for making paper pulp or paper, which are dutiable at the rate of 9 per centum ad valorem or at the rate of 8½ per centum ad valorem, depending upon the date of entry.

---

[1] Paragraph 356 of the Tariff Act of 1930, as originally written, provides as follows:

Planing-machine knives, tannery and leather knives, tobacco knives, paper and pulp mill knives, roll bars, bed plates, and all other stock-treating parts for pulp and paper machinery, shear blades, circular cloth cutters, circular cork cutters, circular cigarette cutters, meat-slicing cutters, and all other cutting knives and blades used in power or hand machines, 20 per centum ad valorem.